UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN RE: AIR CRASH NEAR CLARENCE CENTER,
NEW YORK, ON FEBRUARY 12, 2009.

**DECISION AND ORDER**
09-md-2085

This document relates to:
09-CV-440S
09-CV-379S
09-CV-378S
09-CV-294S

## I. INTRODUCTION

On February 12, 2009, while on final approach to the Buffalo Niagara International Airport, Continental Connection Flight 3407 crashed into a house in Clarence Center, N.Y., killing all 45 passengers, the four-person crew, and one person in the house. By order entered October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred all then-pending actions concerning the crash of Flight 3407 to this Court for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407. In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 655 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009). Subsequently-filed actions have also been transferred here.

Presently before this Court are three separate motions brought by Defendants Colgan Air Inc. and Pinnacle Airlines Corp., in which Defendant Continental Airlines, Inc. joins, to compel proper responses to certain discovery demands. (Docket Nos. 933, 936, 952.[1]) This Court has reviewed and considered the parties' motion papers and finds oral argument to be unnecessary. For the reasons discussed below, Defendants' motions are granted in part and denied in part.

---

[1] All docket references are to the multidistrict docket, 09-md-2085S, unless otherwise noted.

1

## II. DISCUSSION

### A. Discovery Standard

District courts enjoy broad discretion when resolving discovery disputes. That discretion is exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled. See Yancey v. Hooten, 180 F.R.D. 203, 207 (D. Conn. 1998).

Discovery in federal court is broad and permissive. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense . . . ." (Emphasis added.) Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)); see also FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

This relevance standard is "necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" LaForest v. Honeywell Int'l Inc., No. 03-CV-6248, 2004 WL 1498916, at *2 (W.D.N.Y. July 1, 2004) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)); see also Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 52 (D. Conn. 2005) ("Relevancy continues to be 'broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim

or defense of any party.'") (citations omitted; emphasis in original).

But this permissive standard is not unfettered. For example, under Rule 26 (b)(2)(C)(i), a court must limit discovery if it finds that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." A court must also limit discovery if it finds that the burden or expense of the requested discovery outweighs its likely benefit. See Rule 26 (b)(2)(C)(iii).

The party seeking discovery to which it believes it is entitled may seek to compel production under Rule 37 (a). The party resisting discovery bears the burden of specifically demonstrating why the requested discovery — which for documents and things need only be described with "reasonable particularity" under Rule 34 (b)(1)(A) — is objectionable. See Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). Objections must clearly set forth the specifics of each objection and how that objection relates to the discovery being demanded. Id. (citing Roesberg v. Johns-Manville Corp., 85 F.R.D. 292 (E.D. Pa. 1980)). Pat, generic, boilerplate, and non-specific objections will not suffice. Obiajulu, 166 F.R.D. at 295.

**B.    Pecuniary Damages for Wrongful Death**

In each of the three cases at issue, Plaintiffs seek compensatory damages pursuant to New York Estates, Powers and Trusts Law ("EPTL") due to the wrongful death of their respective decedents. Such damages are limited to "fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." EPTL § 5-4.3(a); see Milczarski v. Walaszek, 108 A.D.3d 1190, 969 N.Y.S.2d 685 (N.Y.A.D. 4th Dep't 2013). The "persons for whose benefit the action is

3

brought" include a decedent's statutory distributees, as defined in EPTL § 5-4.4(a), who are commonly referred to as "claimants." "[T]he statutory word pecuniary was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money." Gonzalez v. N.Y.C. Hous. Auth., 77 N.Y.2d 663, 667-8, 572 N.E.2d 598 (1991) (internal quotation marks and emphasis removed). Instead, "[l]oss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death, are injuries for which damages may be recovered." Id. (citing Parilis v. Feinstein, 49 N.Y.2d 984, 985, 406 N.E.2d 1059, 1060 (1980)). "Thus, the essence of the cause of action for wrongful death in [New York] State is that the plaintiff's reasonable expectancy of future assistance or support by the decedent was frustrated by the decedent's death." Gonzalez v. N.Y.C. Hous. Auth., 77 N.Y.2d 663, 668 (1991).

**C.     Defendants' Discovery Requests**

In all three motions presently before the Court, Defendants seek to compel disclosure of financial and tax records for each decedent's claimants. The legal arguments presented by Defendants and Plaintiffs in their submissions on these motions are identical in each case. In addition to claimants' personal records, Defendants also seek disclosure in the Perry lawsuit, No. 09-cv-440, of financial and tax records for a business owned by the claimants. In the Davidson lawsuit, 09-cv-378, 379, Defendants request disclosure of decedents' credit card records.

*i. Claimants' Financial Records*

In light of Plaintiffs' claims for pecuniary damages, specifically loss of support, Defendants seek the following information from the Plaintiffs in the three actions at issue:

4

1. Claimants' financial records from the years 2004 through the present, including banking, credit, investment and retirement accounts . . . ;

2. Claimants' federal income tax returns from the years 2004 through the present, as well as duly executed authorizations permitting Defendants' attorneys to obtain copies . . .;

3. Claimants' W-2 forms issued during the years 2004 through the present . . . ; and

4. Claimants' state income tax returns for the years 2004 through the present . . .;

(Defs' Mem of Law in Perry at 6, Docket No. 933-1; Defs' Mem of Law in Davidson at 3, Docket No. 936-1; Defs' Mem of Law in Neill at 3, Docket No. 952-1.) Defendants highlight this Court's prior decision in the related Pan lawsuit, In re Air Crash near Clarence Ctr., N.Y., on Feb. 12, 2009, Nos. 09-md-2085, 09-CV-961S, 2011 WL 6370189 (W.D.N.Y. Dec. 20, 2011). There, the Court granted Defendants' motion to compel Plaintiff Xiaojun Pan to produce decedent "Yao's and [her] claimants' checking, bank, credit card, debit card, and investment statements, and other records that reflect their personal, family, educational, and business spending between 2004 and 2009" as relevant to, among other things, Yao's "financial support of the claimants, all of which are damages issues in this case." Id. at *4.

Plaintiffs respond in each case that these discovery requests are an inappropriate attempt to "open[] the books" on the financial condition of the survivors with "no possible relevant use of this information other than to prejudice the jury and to intermingle collateral source benefits . . . into the equation of pecuniary damages." (Pl's Mem of Law in Opp'n in Davidson at 4, Docket No. 971; see Pl's Mem of Law in Opp'n in Perry at 3, Docket No. 960; Pl's Mem of Law in Opp'n in Neill at 2-3; Docket No. 1087.) Plaintiffs argue that

Defendants' requests should be denied where: (1) discovery would be contrary to an "unbroken line of cases" holding that a claimant's financial condition is irrelevant to the issue of proper pecuniary damages; (2) Defendants failed to provide authority to the contrary, inasmuch as this Court's decision in Pan is distinguishable; and (3) the tax records requested are only discoverable upon a showing of clear relevance and compelling need. (Pl's Mem of Law in Opp'n in Davidson at 4-5; Pl's Mem of Law in Opp'n in Perry at 4; Pl's Mem of Law in Opp'n in Neill at 3.)

With respect to Pan, Plaintiffs are correct that the discovery request for claimants' financial records there was more narrowly tailored than in the cases presently at issue. In Pan, as relevant, Defendants sought claimants' records "evidencing the support that the decedent provided to the [c]laimants for the years 2004 through the date of the Accident, including, but not limited to, their bank statements, checkbooks, credit card records, and money transfers." (Defs' Mem of Law in Pan at 16-17, Docket No. 668-1.) There appears to have been no request, as there is in the present cases, for the claimants' tax records or post-accident financial records.

Nonetheless, although this renders Pan distinguishable, it does not necessarily compel the conclusion that the requested documents are not discoverable. A plaintiff claiming a loss of support or services from his or her decedent's wrongful death must establish a reasonable expectation that such support would exist but for the wrongful death. Gonzalez, 77 N.Y.2d at 668; Zelizon v. Ullah, 2 A.D.3d 273, 273, 769 N.Y.S.2d 255, 256 (N.Y.A.D. 1st Dep't 2003); see Eria v. Texas E. Transmission Corp., 377 F. Supp 344, 346 (E.D.N.Y. 1974). Relevant to this determination is "whether the decedent would have been legally obligated to support the [claimant] and, if not, whether there is any evidence

that the decedent would have volunteered to do so." Public Adm'r, Kings Cnty v. U.S. Fleet Leasing of N.Y., 159 A.D.2d 331, 331, 552 N.Y.S.2d 608, 608 (N.Y.A.D. 1st Dep't 1990).

Whether a decedent would have volunteered to support or assist a claimant often depends on the extent to which the claimant needs such support. Thus, contrary to Plaintiffs' blanket contention, "[i]t is elementary that a claim for loss of financial support may be supported by evidence *of the plaintiff's needs*" as well as the decedent's income. Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 207 (2d Cir. 1984) (emphasis added); see Datskow v. Teledyne Continental Motors Aircraft Prods., 826 F. Supp 677, 696 (W.D.N.Y. 1993) (a decedent's income is "not the *sine qua non* of an award"). Indeed, "among the myriad factors to be considered" in determining pecuniary damages in a wrongful death case is "the relationship between decedent and those claiming to suffer pecuniary loss and those persons' health age *and circumstances*," including "the extent of [the claimants'] dependency upon the decedent." Franchell v. Sims, 73 A.D.2d 1, 5-6, 424 N.Y.S.2d 959 (N.Y.A.D. 4th Dep't 1980) (emphasis added); see Parilis, 49 N.Y.2d at 985-86 (because direct evidence is generally unavailable to establish pecuniary damages, a jury may properly rely on evidence of "the age, character and condition of the decedent and the *circumstances of his distributees*" (emphasis added)); see also NY PJI 2:320 Vol 1B at 925 (3d ed. 2013) (jury instruction to consider *"the circumstances and condition* of [. . .the distributees]" as well as decedent (emphasis added)).

"Financial dependency is not a precondition to recovery," and may not be relevant in all cases. Franchell, 73 A.D.2d at 7; see Gross v. Abraham, 306 N.Y. 525, 531 (1954) (dependency is only one basis for determining pecuniary damages). For example, where the claimant is the decedent's spouse, the claimant's financial status is irrelevant because

7

any reasonable expectation of future support from the decedent is based on the marriage, not financial need. See Matter of Frank, 286 A.D. 986, 144 N.Y.S.2d 435 (N.Y.A.D. 4th Dep't 1955) (widow's pecuniary loss not lessened by independent income). However, where the claimant in the wrongful death action is either the parent or the child of the decedent, as in each of the cases at issue here, the claimant's expectation of future support is not so clear cut. In such cases, in order to determine whether a claimant's expectation of future monetary support is reasonable, there must be evidence from which a jury could conclude that a decedent not only would have had the ability to provide financial support, but the extent to which he or she would in fact have chosen to do so. See Shatkin, 727 F.2d at 207 (evidence of plaintiff mother's income excluded in absence of foundation of probability that decedent would have provided any support). In other words, although Plaintiffs are correct that the focus of this damages inquiry is what a decedent would have contributed to a claimant, in many cases evidence of a claimant's financial need is "relevant . . . in determining the amount of damages sustained." Franchell, 73 A.D.2d at 7; see Wishart v. Andress, 46 A.D.2d 998, 999, 361 N.Y.S.2d 791, 793 (N.Y.A.D. 4th Dep't 1974) (pecuniary damages award grossly excessive where, among other things, the evidence did not support a conclusion that decedent's father "would have needed or accepted money from his son for some time"); Breckir v. Lewis, 21 A.D.2d 546, 550, 251 N.Y.S.2d 77, 80 (N.Y.A.D. 1st Dep't 1964) (award excessive where 21-year old decedent's parents "were in comfortable circumstances" and therefore unlikely to be in need of financial contribution before decedent would have been "married and contributing to her own family"), *aff'd*, 15 N.Y.2d 1027, 207 N.E.2d 865 (1965). Alfieri v. Cabot Corp., 17 A.D.2d 455, 462, 235 N.Y.S.2d 753, 760 (N.Y.A.D.1962), *affd*, 13 NY2d 1027 (1963)

(award grossly excessive where, among other things, decedent's father "was financially independent and there was at most minimal reliance upon decedent's contribution").

Thus, this Court disagrees with Plaintiffs' position that "there is no possible relevant use of [the requested] information." (Pl's Mem of Law in Opp'n in Davidson at 4, Docket No. 971; Pl's Mem of Law in Opp'n in Perry at 3, Docket No. 960; Pl's Mem of Law in Opp'n in Neill at 2-3; Docket No. 1087); see Breon, 232 F.R.D. at 52 (requested discovery relevant if there is *any possibility* that the information sought may be relevant to a claim or defense of any party).

Plaintiffs argue in the alternative that, even if relevant, the prejudicial nature of this evidence should outweigh any probative value. (Pl's Mem of Law in Opp'n in Davidson at 13, Docket No. 971; Pl's Mem of Law in Opp'n in Perry at 10-11, Docket No. 960; Pl's Mem of Law in Opp'n in Neill at 9; Docket No. 1087.) Evidence of a claimant's financial status is properly precluded when the *sole* purpose of its admission is to prejudice the jury. Franchell, 73 A.D.2d at 7 (citing Chilelli v. Long Island R. R., 271 App.Div. 894, 895, 67 N.Y.S.2d 143 (1946)); McCormick v. Merritt, 232 A.D. 619, 623, 250 N.Y.S. 443, 447 - 448 (N.Y.A.D. 4 Dept.1931) (evidence inadmissible where the "only purpose in offering it was to play upon the sympathy of the jury"). Here, however, Plaintiffs' opposition to each motion consists of the same general argument that discovery should be denied because evidence of claimant's finances is *never* relevant. In the absence of more specific arguments related to the circumstances of particular claimants, there is no basis at this stage to hold that the only use of claimants' financial information would be in an attempt to improperly prejudice the jury. Further, the extent to which the requested information will ultimately be admissible in each case is a separate question from whether it is

discoverable. In re Terrorist Attacks on September 11, 2001, – F.R.D. –, 2013 WL 2641383, *5 (S.D.N.Y. June 12, 2013) (admissibility is not a prerequisite to discoverability). Accordingly, Defendants are entitled to the requested information regarding claimants' banking, credit, investment and retirement accounts, and W-2s. See Rahman v. Smith & Wollensky Rest. Group, Inc., No.No. 06 Civ. 6198(LAK)(JCF), 2007 WL 1521117, *7 (S.D.N.Y. May 24, 2007) (because they are prepared by a third party, W-2s "are not the equivalent of tax returns").

*ii. Claimants' Tax Records*

Defendants also seek claimants' tax records, including state and federal returns. Tax returns are protected by a "qualified privilege." Gattengno v. PriceWaterhouseCoopers, LLP, 205 F.R.D. 70, 72 (D. Conn. 2001); McIntosh v. Bank of America, No. 06-CV-708S(Sr), 2008 WL 4501911, *3 (W.D.N.Y. Sept. 30, 2008); see also United States v. Bonanno Organized Crime Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y.1988) ("while tax returns are not privileged, courts, as a matter of policy, should be cautious in ordering their disclosure"). Therefore, as Plaintiffs argue, discovery is appropriate only where the moving party demonstrates that: "(1) it clearly appears that [the tax returns] are relevant to the subject matter of the action or to the issues raised thereunder; and (2) there is a compelling need for their disclosure because the information contained in the tax returns is not otherwise readily obtainable." Gattengno, 205 F.R.D. at 71-72 (quoting Cooper v. Hallgarten & Co., 34 F.R.D. 482, 484 (S.D.N.Y.1964)); Land Ocean Logistics v. Aqua Gulf Corp., 181 F.R.D. 229, 238-39 (W.D.N.Y. 1998). Although some courts have previously placed the burden of establishing a compelling need on the non-movant, "the modern trend is to require the party seeking discovery to demonstrate both relevancy and

a compelling need" Meijia v. North Shore Farms #1 Ltd., No. CV 10-2589(DRH)(ETB), 2011 WL 573827, *1 (E.D.N.Y. Feb. 15, 2011); see Ellis v. City of N.Y., 243 F.R.D. 109, 112 (S.D.N.Y. 2007) (burden is on the moving party to establish both elements); Trudeau v. N.Y.S. Consumer Pretection Bd., 237 F.R.D. 325, 331 (N.D.N.Y. 2006) (" showing of a compelling need for the information within the tax returns falls upon the party making the demand for this form of disclosure"); Land Ocean Logistics, 181 F.R.D. at 238-39 (same). Contrary to Defendants' contention, it is only after the moving party has established this second step, demonstration of a compelling need for the information, that the burden shifts to the party seeking to avoid disclosure to provide alternate sources for the information sought. Trudeau, 237 F.R.D. at 331; (see Defs' Reply Mem of Law in Perry at 8-9, Docket No. 1108; Defs' Reply Mem of Law in Neill at 8-9, Docket No. 1109; Defs' Reply Mem of Law in Davidson at 8-9, Docket No. 1110.)

Here, as discussed above, information regarding claimants' financial status may be relevant to the issue of pecuniary damages. Defendants have not established, however, that the information contained in the tax returns is not otherwise available through claimants' other financial records or, as Plaintiffs argue, through the claimants' deposition testimony. (See Pl's Mem of Law in Opp'n in Davidson at 19, Docket No. 971; Pl's Mem of Law in Opp'n in Perry at 17, Docket No. 960; Pl's Mem of Law in Opp'n in Neill at 14; Docket No. 1087.) There is nothing in Defendants's submissions that would support a conclusion that the claimants' tax records are the "best source of complete and competent information" regarding the extent to which claimants could reasonably expect future monetary support from their respective decedents. See Butler v. Exxon Mobil Refining & Supply Co., No. 07-386-C-M2, 2008 WL 4059867, *3 (M.D. La. Aug. 28, 2008) (ordering

11

disclosure where accurate income information was not readily obtainable from other sources). Defendants' motions are therefore denied to the extent they seek to compel disclosure of claimants' tax records.

### iii. Records of R&D Consulting (Perry)

In a supplemental memorandum of law in the Perry case, 09-cv-440, Defendants further request that this Court compel Plaintiff Robert R. Perry to produce financial and tax records for R&D Water Consultants, a company owned by himself in which claimant Denise Perry is the sole employee. (Defs' Supp Mem of Law at 1-2, Docket No. 1143.) In addition to the business records, Defendants also seek "[e]valuations, appraisals, mortgage records and [property] tax records relating to any residence owned by Plaintiff from 2005 through the present." (Id. at 2.) Defendants argue that this information is relevant insofar as one theory of loss of future monetary support in this case is premised on decedent Johnathan Perry's promise to provide for Plaintiff and Denise, Johnathan's parents, in the event this business venture did not succeed. (See Defs' Supp Mem of Law at 6, Docket No. 1143; Aff. of Jonathan E. DeMay Ex. C (Plaintiff's responses to Defendants' interrogatories), Docket Nos. 1143-1, 1145.)

Plaintiff asserts that "[t]he only question for the jury is what Johnathan would have given his parents." (Pl's Mem of Law in Opp'n at 8, Docket No. 1144.) This is true, but according to Plaintiff, any financial support, as opposed to gifts, that Johnathan would have given his parents was contingent upon the failure of R&D Water Consultants adversely affecting their personal finances. (Aff. of Jonathan E. DeMay Ex. C (Plaintiffs' response to Defendants' interrogatories), Exs. D, E (deposition testimony of Plaintiff and claimant Denise Perry).) Without any information regarding the health of this company or claimant's

own finances, it is unclear how Plaintiff expects a jury to evaluate this "possibility of failure or misfortune" in order to determine what amount of future financial contributions from Johnathan were reasonably "probable, or even possible" based on this allegation. Franchell, 73 A.D.2d at 5. The requested records are relevant to this issue, and therefore discoverable. As noted above, any determination regarding the extent and form in which this information may be admissible must be made on more specific arguments directed to that issue.

Defendants' request for the tax records of R&D Water Consultants, however, fails for the same reason discovery of the tax records of the individual claimants is denied. Although Defendants demonstrated that the information was relevant, there is no argument that "the information contained in the tax returns is not otherwise readily obtainable" from the company's financial records or the claimants' deposition testimony. See Gattengno, 205 F.R.D. at 71-72. Accordingly, that part of the motion is denied.

*iv. Decedents' Credit Card Records in Davidson*

In addition to the discovery requests discussed above, Defendants also seek in Davidson (09-cv-378, 379) to compel discovery of "all credit card records[2] that reflect [d]ecedents' personal, family, education and business expenses from 2004 through February 12, 2009." (Defs' Mem of Law in Davidson at 6, Docket No. 936-1.) Defendants argue that the credit card records, like the decedents' financial records in general, "are relevant to prove (or disprove) that [d]ecedents provided the claimed financial support, as

---

[2]Defendants initially moved to compel discovery of additional records related to the decedents' assets in this case. The disclosure requests other than that for credit card statements appear to have been resolved. (Pl's Mem of Law in Opp'n at 1 n. 1, Docket No. 971 (describing additional disclosure); Defs' Reply Mem of Law at 1-2, Docket No. 1110 (discussing only credit card records).)

13

well as to demonstrate [d]ecedents' financial status and level of personal consumption, which are essential components to evaluating Plaintiff's alleged economic damages." (Defs' Mem of Law in Davidson at 7). Plaintiff responds that the credit card statements will "add nothing to the Defendants' review." (Pl's Mem of Law in Opp'n at 24, Docket No. 971.)

Here, as in Pan, this Court finds that the decedents' credit card records are relevant to the issue of pecuniary damages. See In re Air Crash near Clarence Ctr., N.Y., on Feb. 12, 2009, Nos. 09-md-2085, 09-CV-961S, 2011 WL 6370189, at *4 (W.D.N.Y. Dec. 20, 2011). A decedent's past personal expenditures are properly considered when determining what he or she would have contributed to survivors. McKee v. Colt Electronics, 849 F.2d 46, 49 (2d Cir. 1988); LaMarca v. United States, 31 F. Supp. 2d 110, 130 (E.D.N.Y. 1998); Halvorsen v. Ford Motor Co., 132 A.D.2d 57, 63, 522 N.Y.S.2d 272, 276 (N.Y.A.D. 3d Dept. 1987), *lv denied*, 71 N.Y.2d 805 (1988); see also St. Clair v. Eastern Air Lines, Inc., 279 F.2d 119, 121 (2d Cir. 1960) (evidence showing a propensity of a "decedent to spend his income in ways which do not inure to the benefit of his family" is relevant to issue of damages in wrongful death case), *cert denied*, 364 U.S. 882 (1960). This part of Defendants' motion is therefore granted.

### III. CONCLUSION

Defendants' motions to compel are granted to the extent that they seek disclosure of claimants' financial records, but denied with respect to tax records. Defendants' motion in Perry is further granted with respect to the financial, but not tax, records of claimants' company. Defendants' motion in Davidson is also granted with respect to the sought disclosure of decedents' credit card records.

## IV. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Compel Discovery in <u>Perry</u> (Civil (09-CV-440S) Docket Nos. 275, 337; MDL (09-md-2085) Docket Nos. 933, 1143) is GRANTED in part and DENIED in part;

FURTHER, that Defendants' Motion to Compel Discovery in <u>Davidson</u> (Civil (09-CV-378S, 09-CV-379S) Docket No. 262; MDL (09-md-2085) Docket No. 936) is GRANTED in part and DENIED in part;

FURTHER, that Defendants' Motion to Compel Discovery in <u>Neill</u> (Civil (09-CV-294S) Docket No. 270; MDL (09-md-2085) Docket No. 952) is GRANTED in part and DENIED in part;

FURTHER, that Plaintiffs shall provide responsive documents as ordered herein within 20 days of the entry date of this decision.

SO ORDERED.

Dated: November 3, 2013
      Buffalo, New York

<u>/s/William M. Skretny</u><br>
WILLIAM M. SKRETNY<br>
Chief Judge<br>
United States District Court