UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IN RE: AIR CRASH NEAR CLARENCE CENTER,
NEW YORK, ON FEBRUARY 12, 2009,

_____

**DECISION AND ORDER**
09-md-2085

This document relates to:
ALL CASES

## I.  INTRODUCTION

On February 12, 2009, while on final approach to the Buffalo Niagara International Airport, Continental Connection Flight 3407 crashed into a house in Clarence Center, N.Y., killing all 45 passengers, the four-person crew, and one person in the house.  By order entered October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred all then-pending actions concerning the crash of Flight 3407 to this Court for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.  In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 655 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009).  Subsequently-filed actions have also been transferred here.  Nine individual actions remain.

Presently before this Court is Plaintiffs' Motion for an Order Overruling Objections to their Second Request for the Production of Documents and Things made by Defendants Colgan Air Inc. and Pinnacle Airlines Corp. (collectively "Colgan").  (Docket No. 842.)  The discovery requests relate to Colgan's pilot hiring, training, selection, and supervision, as well as to Colgan's safety records and protocols.  This Court has considered the parties' motion papers and finds oral argument to be unnecessary.  For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part.

## II.  DISCUSSION

A.   **Discovery Standard**

District courts enjoy broad discretion when resolving discovery disputes.  That discretion is exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled.  See Yancey v. Hooten, 180 F.R.D. 203, 207 (D.Conn. 1998).

Discovery in federal court is broad and permissive.  Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense . . . ."  (Emphasis added.)  Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)); see also FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

This relevance standard is "necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  LaForest v. Honeywell Int'l Inc., No. 03-CV-6248, 2004 WL 1498916, at *2 (W.D.N.Y. July 1, 2004) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) and omitting citation); see also Breon v. Coca-Cola Bottling Co. of New England,232 F.R.D. 49, 52 (D.Conn. 2005) ("Relevancy continues to be 'broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be

relevant to the claim or defense of any party.'") (citations omitted; emphasis in original).

But this permissive standard is not unfettered. For example, under Rule 26 (b)(2)(C)(i), a court must limit discovery if it finds that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." A court must also limit discovery if it finds that the burden or expense of the requested discovery outweighs its likely benefit. See Rule 26 (b)(2)(C)(iii).

The party seeking discovery to which it believes it is entitled may seek to compel production under Rule 37 (a). The party resisting discovery bears the burden of specifically demonstrating why the requested discovery — which for documents and things need only be described with "reasonable particularity" under Rule 34 (b)(1)(A) — is objectionable. See Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). Objections must clearly set forth the specifics of each objection and how that objection relates to the discovery being demanded. Id. (citing Roesberg v. Johns-Manville Corp., 85 F.R.D. 292 (E.D.Pa. 1980)). Pat, generic, boilerplate, and non-specific objections will not suffice. Obiajulu, 166 F.R.D. at 295.

**B.    Objections to Pilot Hiring, Training, Selection, and Supervision Requests**

Plaintiffs' Second Request for the Production of Documents and Things seeks information concerning Colgan's pilot hiring, training, selection, and supervision. (See Plaintiffs' Second Request for the Production of Documents and Things, Docket No. 853-17, Requests 1-4; 7-11; 13; 15-16; 19-21; 24-25; 29-41.) Colgan objects on relevancy grounds. It argues that Plaintiffs' requests are not reasonably related to a violation of any applicable federal standard of care and are therefore beyond the scope of permissible

discovery. Plaintiffs counter that their requests are relevant to whether Colgan acted carelessly or recklessly, which Plaintiffs maintain is the standard of care that governs Colgan's actions. The parties' dispute is driven by their divergent views of the applicable standard of care that flows from this Court's determination that federal law preempts state law in the field of aviation safety. See In Re Air Crash Near Clarence Center, New York, On February 12, 2009, 798 F.Supp.2d 481, 483-486 (W.D.N.Y. 2011).

On July 18, 2011, this Court resolved Colgan's Motion for the Application of a Federal Standard of Care. See id. At issue was whether Congress intended the Federal Aviation Act of 1958 (the "Aviation Act"), 49 U.S.C. §§ 40101, et seq., and its associated regulations (e.g., 14 C.F.R. §§ 21.199, et seq.) to preempt all state law standards of care relating to air safety. See id. at 484.

Based on the authority of Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n, 634 F.3d 206, 212 (2d Cir. 2011), this Court found that Congress intended the Aviation Act to entirely preempt state regulation of air safety. Id. at 485. As it pertains to the scope of the federal preemption, this Court found that the Aviation Act and the corresponding regulations constitute an "overarching general standard of care." In Re Air Crash Near Clarence Center, New York, On February 12, 2009, 798 F.Supp.2d at 486 (citing Shupert v. Cont'l Airlines, Inc., No. 00 Civ. 2743(LMM), 2004 WL 784859, at *6 (S.D.N.Y. Apr. 12, 2004) and 14 C.F.R. § 91.13(a)). Thus, this Court found that the general standard of care set forth in 14 C.F.R. § 91.13(a), together with the numerous aviation safety regulations in Title 14, preempted state law standards of care. Id.

The issue raised by the present motion is what standard of care applies to Plaintiffs' negligence claims concerning pilot hiring, training, selection, and supervision. Plaintiffs

4

maintain that a general reckless or careless standard of care applies, whether derived from 14 C.F.R. § 91.13 or from common law. Colgan disagrees. It argues that the applicable standards of care must be derived from specific federal regulations governing pilot hiring, training, selection, and supervision, not from the reckless or careless standard of care set forth in 14 C.F.R. § 91.13, which applies only to operation of aircraft.

To begin, this Court has previously found — and Plaintiffs did not argue otherwise — that Plaintiffs' negligent hiring, training, and supervision claims directly implicate air safety. In Re Air Crash Near Clarence Center, New York, On February 12, 2009, 798 F.Supp.2d at 485. The claims are therefore governed by a federal standard of care, because federal laws and regulations exclusively occupy the field of air safety. Id. at 486 ("Federal laws and regulations exclusively occupy the field of air safety and therefore apply to Plaintiffs' claims, which directly implicate that field."). Plaintiffs' suggestion that a common law standard of care applies (presumably one falling outside the federal laws and regulations governing air safety) is thus foreclosed by this Court's previous decision.

Equally unpersuasive is Plaintiffs' contention that the applicable federal standard of care for the claims at issue is the careless or reckless standard found in 14 C.F.R. § 91.13. By its plain terms, 14 C.F.R. § 91.13 applies to the *operation* of an aircraft, either in-flight (§ 91.13(a)) or on the ground (§ 91.13 (b)):

> § 91.13 Careless or reckless operation.
>
> (a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
>
> (b) Aircraft operations other than for the purpose of air navigation. No person may operate an aircraft, other than for the purpose of air navigation, on any part of the surface of an

>airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo), in a careless or reckless manner so as to endanger the life or property of another.

14 C.F.R. § 91.13; see also Elassaad v. Independence Air, Inc., 613 F.3d 119, 129-30 (3d Cir. 2010) (discussing the meaning of 14 C.F.R. § 91.13); Williams v. U.S. Airways, Inc., No. 10-0399, 2010 WL 4720844, at *2 (E.D.Pa. Nov. 18, 2010) (finding that 14 C.F.R. § 91.13(a) applies to in-flight operations and 14 C.F.R. § 91.13(b) applies to ground operations).

The Aviation Act defines "operate aircraft" and "operation of aircraft" as "using aircraft for the purposes of air navigation, including (A) the navigation of aircraft;[1] and (B) causing or authorizing the operation of aircraft with or without the right of legal control of the aircraft." 49 U.S.C. § 40102 (35). The regulations contain similar definitions. See 14 C.F.R. § 1.1 (with respect to aircraft, defining "operate" to mean "use, cause to use or authorize to use aircraft, for the purpose (except as provided in § 91.13 of this chapter[2]) of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise)" and defining "operational control" to mean "the exercise of authority over initiating, conducting or terminating a flight."). Thus, 14 C.F.R. § 91.13 provides the general standard of care applicable in the absence of a specific federal regulation, but only when the operation of an aircraft is at issue. See Williams, 2010 WL 4720844, at *2 (identifying 14 C.F.R. § 91.13 as the general duty of care that applies to operation of an aircraft in the absence of a specific federal regulation).

---

[1]"Navigate aircraft" and "navigation of aircraft" include piloting aircraft. 49 U.S.C. § 40102 (33).

[2]This exception presumably relates to 14 C.F.R. § 91.13(b). See Elassaad, 613 F.3d at 129.

Plaintiffs' negligent hiring, training, selection, and supervision claims fall outside the operation of an aircraft as contemplated in 14 C.F.R. § 91.13. That regulation therefore does not provide the applicable federal standard of care. See, e.g., Elassaad, 613 F.2d at 130 (finding that § 91.13 did not apply to a plaintiff injured while disembarking an aircraft because the aircraft was not being operated for the purpose of air navigation at the time).

Plaintiffs' arguments are unpersuasive because they rely on an expansive reading of this Court's previous decision that comports with neither the plain language of the regulations nor the governing caselaw. They argue that 14 C.F.R. § 91.13 provides a general standard of care governing *all* issues related to air safety in the absence of a specific regulation, not just those involving the operation of aircraft. This position is not supported by the governing law or regulations and is not supported by this Court's previous holding, which was limited to whether federal standards of care preempt state standards.[3] Plaintiffs provide no legal authority for their position and this Court is unaware of any cases endorsing such an all-encompassing view of 14 C.F.R. § 91.13.

Plaintiffs maintain that this Court's failure to apply the general standard of care in 14 C.F.R. § 91.13 will deprive them of their state law remedies and absolve Colgan of liability. But as this Court previously held, the Aviation Act's savings clause, 49 U.S.C. § 40120(c), preserves state law causes of action and remedies. See In Re Air Crash Near Clarence Center, New York, On February 12, 2009, 798 F.Supp.2d at 486. The effect of preemption is not to deprive Plaintiffs of their state remedies, but rather, to substitute a

---

[3]Plaintiffs' representation that this Court "held that a federal general standard of care (prohibiting careless and reckless conduct) governed defendants' decisions regarding Colgan's pilots" finds no support in this Court's previous decision. See Plaintiffs' Reply Memorandum of Law, Docket No. 923, p. 1. This Court did not (and was not asked to) resolve what federal standard of care applies to each of Plaintiffs' claims.

federal standard of care for New York's reasonably-prudent-person standard. Id. This results in neither the elimination of state remedies nor the absolution of liability; it avoids an unmanageable patchwork of potentially 50 different state standards. See id. at 486 (noting that "[a]pplying state law standards of care would interfere with [federal aviation regulations] and potentially subject airlines and related entities to 50 different standards"); see also French v. Pan Am Express, Inc., 869 F.2d 1, 6 (1st Cir. 1989) (commenting generally that "a patchwork of state laws" in the field of air safety could conflict and create a "crazyquilt effect").

Colgan, like all airlines, remains subject to the comprehensive scheme of federal regulations that govern air safety and the specific standards of care therein. As New York State Supreme Court Justice Frederick Marshall set forth in the state companion litigation, numerous regulations in addition to 14 C.F.R. § 91.13 govern air safety:

> [F]ederal law provides specific guidelines for matters affecting air safety. Included are measures governing pilot training, certification and hiring. For example, see § 44703 (requirements for airman certificates); 14 C.F.R. § 60 et seq., (requirements for flight simulator training devices, qualification and use); 14 C.F.R. § 61 et seq., (pilot certification); 14 C.F.R. § 91 et seq., (pilot operations); 14 C.F.R. § 121 et seq. (domestic carrier operations); 14 C.F.R. § 141 et seq., (pilot schools) and 14 C.F.R. § 142 et seq., (aviation training centers).
>
> With respect to pilot training, certification and hiring, the regulations appear to be exhaustive. See French v. Pan Am Express, Inc., supra at 8-9.[4] These regulations pertain to every aspect of flight training, simulator training, testing, pilot qualifications and standards for hiring pilots.
>
> . . .

---

[4] French v. Pan Am Express, Inc., 869 F.2d 1 (1st Cir. 1989).

> Other regulations cover areas such as "recent experience", 14 C.F.R. 121.439; "line checks", 14 C.F.R. 121.440 and "proficiency checks", 14 C.F.R. 121.441. Training is extensively covered in Subpart N of Title 14.

In the Matter of the Air Crash Near Clarence Center, New York, on February 12, 2009, 38 Misc.3d 308, 313 (N.Y. Sup. Ct. 2012) (Marshall, J.); see also Affidavit of David Harrington, Docket No. 894-1, ¶¶ 11-20 and Exhibits H and I (setting forth the comprehensive air safety scheme).

Consequently, this Court finds that Plaintiffs' negligent hiring, training, selection, and supervision claims are subject to the standards of care contained in the specific federal regulations that may apply, not to the careless or reckless standard of care in 14 C.F.R. § 91.13, which applies only to claims involving the operation of aircraft. Plaintiffs' request for an Order overruling Colgan's objections on this basis is therefore denied.

If, however, Colgan possesses documents and things that are relevant to violations of specific federal regulations that may apply, it is directed to produce them. This production shall not be constrained by Colgan's position that the requests must be related to the in-flight conduct of the Flight 3407 flight crew, see Colgan's Memorandum of Law, Docket No. 894, p. 12, since Plaintiffs are entitled to all information "that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" LaForest, 2004 WL 1498916, at *2.

**C.   Objections to Safety Incident Reporting Forms and Safety Meetings and Audits**

Plaintiffs' Second Request for the Production of Documents and Things seeks information concerning Colgan's safety incident reporting forms and safety meetings and audits. In particular, Plaintiffs seek information concerning (1) Colgan's Aviation Safety

9

Action Program ("ASAP") reports from 2005 to the present (Request 12); (2) Colgan's internal safety incident forms (Requests 13-14); and (3) Colgan's safety meetings and third-party audits (Requests 17-18).  (See Plaintiffs' Second Request for the Production of Documents and Things, Docket No. 853-17, Requests 12-14; 17-18.)

Colgan maintains that disclosure of the ASAP reports and safety meetings and audits[5] is protected by the qualified privilege created in In re Air Crash Near Cali, Columbia on Dec. 20, 1995, but it does not defend its other assertions of privilege, which this Court therefore deems abandoned.  959 F. Supp. 1529 (S.D. Fla. 1997).  Colgan also maintains its overall objection that each of Plaintiffs' requests are not limited in time or scope.  These issues are addressed in turn.

   1.   **ASAP Reports and Safety Meetings and Audits**

In Request 12, Plaintiffs seek "[a]ll Colgan Aviation Safety Action Program (ASAP) reports from 2005 to the present."  ASAP reports are filed by airline employees to report safety-related incidents.

> ASAP reports arise from voluntary programs initiated in 1996 by the FAA whereby airline employees may report safety-related incidents to an Event Review Committee, typically consisting of a representative of the airline, the airline pilots' union and the FAA.  70 J. Air L. & Com. 83, 104 (Winter 2005).  The FAA takes "no action" if the report is the only source of information.  The FAA is limited to administrative action, a letter of correction or a warning notice, if the report is not the only source.  In any event, the report cannot be used by the company for disciplinary action, although corrective action may be required.

---

[5]In its memorandum, Colgan discusses only the ASAP reports, though it asserts the same objection to Plaintiffs' request for information concerning safety meetings and audits.  See Colgan's Memorandum of Law, Docket No. 894, p. 15.  This Court will likewise discuss only the ASAP reports.

In re Air Crash at Lexington, Kentucky, August 27, 2006, 06-CV-316-KSF, 2008 WL 170528, at *1 (E.D.Ky. Jan. 17, 2008). As voluntarily submitted information, the FAA does not typically disclose ASAP reports, but will do so by agreement or under court order. See 49 U.S.C. § 40123; 14 C.F.R. § 193.7(f). The FAA may also disclose ASAP reports when refusing to do so would be inconsistent with its safety and security responsibilities, such as to correct unsafe conditions or to carry out a criminal investigation or prosecution. See 14 C.F.R. § 193.9.

Colgan's privilege objections are grounded solely in the qualified privilege developed for ASAP reports by the court in Cali. There, the airline, together with *amici*, argued that ASAP reports should be protected from disclosure by the "self-critical analysis" privilege or a new common law privilege to protect the confidentiality of the program and encourage voluntary reporting. Cali, 959 F. Supp. at 1532. Although the court rejected the airline's assertion of the "self-critical analysis" privilege, it held that ASAP reports could be protected under a new qualified common law privilege, consistent with Rule 501 of the Federal Rules of Evidence. Id. at 1533, 1535. Under this judicially-created privilege, ASAP reports are discoverable only upon "a highly particularized showing of [a] need for the documents, and [demonstration] that the information sought is not known or available to the [p]laintiffs." Id. at 1536-37.

But as recognized in In re Air Crash at Lexington, Kentucky, August 27, 2006, federal courts have not followed Cali or created similar common law privileges protecting ASAP reports. 2008 WL 170528, at * 8. The Lexington court, in fact, reached the opposite conclusion. It found that no statutory or regulatory privilege applied to ASAP reports, nor

are the reports protected by the self-critical analysis or common law privileges. See id. at *5-*9. The Lexington court's analysis is persuasive.

Disclosure of ASAP reports is not wholly protected by statute or regulation, and in fact, the applicable statutes and regulations contemplate disclosure in a number of circumstances, as set forth above. See 49 U.S.C. § 40123; 14 C.F.R. §§ 193.7(f); 193.9. Moreover, this Court, in a separate decision, has found that the self-critical analysis privilege is not recognized in this circuit and has been specifically rejected in this district. See In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 09-MD-2085, Docket No. 1158 (W.D.N.Y. Aug. 23, 2013). And like the Lexington court, this Court declines to recognize the qualified privilege created in Cali.

Privileges are disfavored as an impediment in the search for truth in the litigation process. See United States v. Nixon, 418 U.S. 683, 710, 41 L. Ed. 2d 1039, 1065, 94 S. Ct. 3090, 3108 (1974). They should therefore not be "lightly created or expansively construed." Id. at 712. The Cali court created a qualified privilege to address what it perceived to be "a genuine risk of a meaningful and irreparable chill from the compelled disclosure of ASAP materials." In re Air Crash Near Cali, Columbia on Dec. 20, 1995, 959 F. Supp. at 1535. But Congress and the FAA likewise considered those concerns yet failed to create a statutory or regulatory privilege. See In re Air Crash at Lexington, Kentucky, August 27, 2006, 2008 WL 170528, at *8 (finding that "[t]he concerns regarding reluctance to report were considered by Congress and the FAA, and the incentives deemed sufficient to protect the program were provided"). This failure is significant, because Congress has otherwise created privileges to shield aviation information it deems sensitive and deserving of protection, such as the privilege afforded to cockpit voice

12

recorders. See 49 U.S.C. § 1154. Its failure to act similarly to protect ASAP reports, coupled with the United States Supreme Court's directive that privileges not be lightly created, leads this Court to concur with the Lexington court and find that a judicially-created privilege governing discovery of ASAP reports is unwarranted and should not be recognized. See Univ. of Pennsylvania v. E.E.O.C., 493 U.S. 182, 198, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) ("We are especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself.") Colgan's reliance on Cali is thus unpersuasive.

Accordingly, this Court finds that the ASAP reports in Plaintiffs' Request 12 are not privileged and must be produced. Colgan's privilege objections are overruled. For the same reasons, Colgan must also produce documents and things responsive to Plaintiffs' Request 17 (2007 Department of Defense Audit) and Request 18 (Flight Safety Meetings/Audits).

### 2. Limits on Time and Scope

Colgan maintains that Plaintiffs' requests are not sufficiently limited in time or scope. Plaintiffs do not respond on an individual basis, but rather, consent to a narrowing of their requests to responsive documents and things from January 1, 2004, forward, which is about 5 years before the air crash.[6] This is a reasonable time limitation that addresses Colgan's temporal concerns. Plaintiffs' requests are therefore limited accordingly.

As to scope, Plaintiffs are entitled to all non-privileged information that is relevant

---

[6]In their reply memorandum, Plaintiffs also consent to production of the ASAP reports from January 1, 2001, forward. See Plaintiffs' Reply Memorandum, Docket No. 923, p. 11, n.10. Request 12, however, demands ASAP reports from 2005 to the present, which is the time frame that will govern that request.

13

to any claim or defense in the case. Plaintiffs have not addressed Colgan's specific arguments as to scope. Nonetheless, this Court is confident that with the benefit of this decision, the parties will have little difficulty agreeing on the appropriate scope for each of Plaintiffs' surviving requests.

## IV.  CONCLUSION

Plaintiffs' Motion for an Order Overruling Objections to their Second Request for the Production of Documents and Things is granted in part and denied in part, consistent with this decision.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for an Order Overruling Objections to their Second Request for the Production of Documents and Things (Docket No. 842) is GRANTED in part and DENIED in part.

FURTHER, that Defendants shall provide responsive documents as ordered herein by December 1, 2013.

SO ORDERED.

Dated: November 6, 2013
       Buffalo, New York

                           /s/William M. Skretny
                          WILLIAM M. SKRETNY
                                Chief Judge
                       United States District Court